UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TRUNNETTE SMITH,

       Plaintiff,

v.                                                          Case No. 8:11-cv-162-T-27AEP

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review of the denial of her claim for a period of disability, disability insurance benefits ("DIB"), and Supplement Security Income ("SSI"). Because the ALJ's decision was based on substantial evidence and employed proper legal standards, I recommend the Commissioner's decision be affirmed.

**I.**

**1.**     **Procedural Background**

Plaintiff filed an application for a period of disability, DIB, and SSI claiming disability beginning November 9, 2004 (Tr. 165-73). The Commissioner denied her claims both initially and upon reconsideration (Tr. 73-80, 98-103, 106-10). Plaintiff then requested an administrative hearing (Tr. 111-12). Per her request, the Administrative Law Judge ("ALJ") held a hearing at which Plaintiff appeared with counsel and testified (Tr. 28-72). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denying Plaintiff's

claims for benefits (Tr. 7-27). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-6). Plaintiff then timely filed a complaint with this Court (Dkt. No. 1). The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

**2.     Factual Background and the ALJ's Decision**

Plaintiff, who was born on October 10, 1970, has a general equivalency diploma (Tr. 40) and past relevant work experience as a certified nursing assistant, home health aide, and grocery store clerk (Tr. 41-42, 226-32). She alleges disability due to anxiety, headaches, arm and hand numbness, shortness of breath, and neck, back, foot, knee, ankle, shoulder and wrist pain stemming from an automobile accident occurring on November 9, 2004, which is the alleged disability onset date (Tr. 187, 192, 1969, 198, 213).

After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: degenerative disc disease of the cervical spine; history of ulnar compression of the right upper extremity, status post surgical release; history of ankle sprains with periods of possible low grade reflex sympathetic dystrophy of the right foot versus tarsal tunnel syndrome; history of internal derangement of the right knee, status post menisectomy; pes palnus and planter flexion deformity of the feet; obesity; post-traumatic stress syndrome; and major depressive disorder (Tr. 13). Notwithstanding the noted impairments, the ALJ determined Plaintiff retained a residual functional capacity ("RFC") to perform a limited range of sedentary work. More specifically, the ALJ determined Plaintiff could perform sedentary work with an opportunity to alternate from a sitting to a standing position every hour for 5

minutes at a time; should never kneel, crawl, or climb ladders, ropes, or scaffolds; only occasionally balance, stoop, or crouch; not perform overhead work; occasionally grasp and reach with her right non-dominant upper extremity; avoid temperature extremes, excessive vibration, dangerous moving machinery, and unprotected heights; has the ability to complete 1-3 step tasks in a workplace environment with only occasional changes; and can work in the vicinity of other co-workers as long as there is only occasional interaction with them and no direct interaction with the public (Tr. 15). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although Plaintiff had underlying impairments that could cause the symptoms alleged, her statements regarding the frequency, intensity and duration of her complaints were not credible to the extent they conflicted with the aforementioned RFC (Tr. 15-19). Considering her noted impairments, however, the ALJ determined Plaintiff could not perform her past relevant work (Tr. 19).

After determining Plaintiff could not perform her past relevant work, the ALJ relied on the assessment of a vocational expert ("VE") to determine the extent to which Plaintiff's limitations eroded the unskilled sedentary occupational base (Tr. 20). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as surveillance system monitor or food/beverage order clerk (Tr. 20). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 20).

**II.**

To be entitled to benefits, a claimant must be disabled, meaning he must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Subpart P; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§

4

404.1520(a), 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

5

**III.**

Plaintiff argues here that the ALJ erred by failing to give proper weight to the opinion of psychologist Dr. Tracy Hartig and by failing to consider her complaints of pain, depression and anxiety. For the reasons discussed below, the Court finds the ALJ applied the correct legal standards and the decision is supported by substantial evidence.

### 1. Weight of Medical Opinion

Plaintiff first contends the ALJ erred by failing to accord proper weight to the opinion of her consultative psychologist, Dr. Hartig (Dkt. 19 at 11-13). In assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). The Social Security regulations provide guidelines for the ALJ to employ when evaluating medical opinion evidence. *See* 20 C.F.R. §§ 404.1527, 416.927. In determining the weight to afford a medical opinion, the ALJ considers a variety of factors including but not limited to the examining relationship, the treatment relationship, whether an opinion is well-supported, whether an opinion is consistent with the record as a whole, and the area of the doctor's specialization. 20 C.F.R. §§ 404.1527(d), 416.927(d).

Here, Dr. Hartig's opinion was not entitled to substantial weight because she examined Plaintiff on one occasion, did not have a treatment relationship with Plaintiff, her opinion as to the effect of Plaintiff's mental impairments on the ability to work was not well-supported by her findings and her opinion was inconsistent with the record as a whole. Dr. Hartig conducted a single psychological evaluation of Plaintiff in February 2007 upon referral from the Division of

Disability Determinations (Tr. 687-91). In a report following examination, Dr. Hartig noted Plaintiff arrived on time; she filled out a background form; she was appropriately groomed and dressed, alert and articulate; she maintained fair eye contact; her thinking appeared logical and goal directed; she did not endorse unusual preoccupations or have trouble with racing thoughts; she was well oriented to person, place, time and situation; she denied past or present suicidal or homicidal ideation, intent or plan; she described positive self characteristics and related there was nothing about herself she disliked; she reported having medication which helped quell panic attacks; she did not suffer from auditory or visual hallucinations; she had no readily apparent signs of psychosis; she did not present as paranoid or grandiose; she gave no indication of delusions; her attention and concentration throughout the interview appeared good; she appeared to have adequate abstract thinking skills; and she could perform simple mathematical calculations without difficulty (Tr. 689-90). At the same time, Dr. Hartig observed Plaintiff's facial expression was sad; her motor activity was restless at times; several times during the evaluation, tears ran down her face; and her intellectual abilities appeared to fall within the average to low average range (*id.*).

After conducting her evaluation, Dr. Hartig opined that Plaintiff suffered from chronic post-traumatic stress disorder and chronic major depressive disorder (Tr. 690). Dr. Hartig further opined that Plaintiff's ability to sustain her concentration and persist in activities was impaired due to her depression and anxiety, her physical problems might interfere with her concentration and persistence, she would have trouble maintaining employment where socialization was required given that she was prone to tears, and her ability to adapt to work-related stressors and

7

changes was considered fair to poor since she was likely to easily become overwhelmed (Tr. 690). Notwithstanding, Dr. Hartig recommended Plaintiff engage only in outpatient mental health counseling to address her history of sexual abuse and the emotional problems she experienced as a result of her car accident (Tr. 691).

In rendering her decision, the ALJ afforded little weight to Dr. Hartig's opinion that Plaintiff would have trouble maintaining employment (Tr. 18).[1] Among other things, the ALJ found Dr. Hartig's mental status findings contained in the examination report indicated Plaintiff established excellent rapport, was articulate, her thinking was clear and logical, and she could remain calm during the interview despite being tearful at times and restless (Tr. 17-18). These findings are inconsistent with Dr. Hartig's opinion that Plaintiff would have trouble maintaining employment where socialization was required and therefore weigh against affording substantial weight to Dr. Hartig's opinion. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); *see generally Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (stating good cause exists for failing to give a treating physician's opinion substantial or considerable weight if the physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the doctor's own medical records).

---

[1] A physician's opinion on a dispositive issue reserved to the Commissioner, such as whether the claimant is disabled or unable to work, does not constitute a medical opinion and thus does not receive any special significance, but will be taken into consideration. 20 C.F.R. §§ 404.1527(e), 416.927(e); *Kelly v. Comm'r of Soc. Sec.*, 401 Fed. App'x 403, 407 (11th Cir. 2010). Although the ALJ did not so state, to the extent Dr. Hartig's opinion concerns the claimant's inability to work, the opinion was not entitled to any significance. *See* 20 C.F.R. §§ 404.1527(e), 416.927(e).

Moreover, the ALJ noted Plaintiff had never received inpatient mental health treatment, and the outpatient notes from both mental health facilities Plaintiff visited indicated she failed to follow up on recommendations made by the treating doctors, including keeping scheduled appointments and adhering to prescribed medication, which led to her discharge as a patient (Tr. 18). As a result, the ALJ properly afforded little weight to Dr. Hartig's opinion and, instead, afforded greater weight to the reviewing state agency psychological assessments as they had the opportunity to review the entire medical record (Tr. 19). Indeed, the opinions of the state agency psychologists, as well as the medical evidence of record, support the ALJ's decision.[2] For instance, in July 2005, state agency psychologist Dr. Wayne Conger reviewed Plaintiff's medical record and opined that Plaintiff's mental impairments would cause only mild difficulties in maintaining social functioning and concentration, persistence or pace (Tr. 499-512). He further found Plaintiff remained fully functional from a mental perspective despite her depression and anxiety related to her medical problems, her anxiety from the post-traumatic stress disorder did not appear to place severe barriers to her overall adaptive functioning capabilities, she related in a socially appropriate manner, and she displayed an overall adequate mental status (Tr. 511). Based on those findings, Dr. Conger opined Plaintiff appeared primarily limited by her physical difficulties and therefore found no indication of a severe mental impairment at that time. Similarly, in March 2006, state agency psychologist Dr. Jill Rowan reviewed Plaintiff's medical

---

[2] State agency consultants are considered experts in the Social Security disability evaluation context. 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i). The ALJ must treat the findings of fact set forth by a state agency psychologist as expert opinion evidence of a non-examining source and must explain the weight it gives to such evidence. *Maffia v. Comm'r of Soc. Sec.*, 433 Fed. App'x 856, 857 (11th Cir. 2011) (citing Social Security Ruling 96-6p).

9

record and opined Plaintiff's mental impairments were not severe and caused her no more than mild difficulties in maintaining concentration, persistence or pace (Tr. 432-45).

Following that, in March 2007, a few weeks after Dr. Hartig's assessment, state agency psychologist Dr. John Wright reviewed Plaintiff's medical record and opined that Plaintiff's mental impairments caused only moderate difficulties in maintaining social functioning and in maintaining concentration, persistence and pace (Tr. 692-709). Dr. Wright noted Plaintiff could still perform simple, routine tasks with simple job changes within her physical limitations and would function best in a work setting involving low social interaction demands (Tr. 708). Subsequently, in December 2007, state agency psychologist Dr. Patrick Peterson reviewed Plaintiff's medical record and similarly opined that Plaintiff would only have moderate difficulties in maintaining concentration, persistence and pace (Tr. 726-42). According to Dr. Peterson, Plaintiff maintained the ability to participate in a range of social and routine daily activities and was likewise capable of sustaining the mental demands of appropriate concentrated task-oriented activity (Tr. 742). As such, the opinions of the state agency psychologists support the ALJ's findings and the ALJ properly afforded them greater weight than that of Dr. Hartig's opinion in rendering her decision.

Additionally, the medical evidence of record provides further support for the ALJ's decision to afford less weight to Dr. Hartig's opinion. As the record indicates, and the ALJ notes, Plaintiff received sporadic treatment for her major depressive disorder and post-traumatic stress disorder during the period from 2004 through 2009. Initially, Plaintiff attended an assessment in December 2004 at which she was recommended for a psychiatric evaluation and psychotherapy

10

(Tr. 789-98). After the initial assessment, Plaintiff did not return for treatment until April 2005 (Tr. 786-87). Plaintiff did not receive any treatment at that time and a note indicates that Plaintiff's non-compliance with counseling would operate as a barrier to successful treatment (*id.*).

That same month, however, Plaintiff began regular visits with psychiatrist, Dr. Ashit Vijapura (Tr. 446-55). The records from Dr. Vijapura indicate Plaintiff's subjective complaints regarding Plaintiff's mental health status as well as the medications prescribed to Plaintiff during the time frame from April 2005 through July 2006 (Tr. 446-55, 648-55). Besides the initial assessment, however, nothing appears in Dr. Vijapura's notes regarding any further mental exams or medical findings as to Plaintiff's mental health or impairments.

In June 2005, consultative psychologist Dr. Gregory Landrum met with Plaintiff (Tr. 523-24). Upon examination, Plaintiff had a depressive demeanor, was well-groomed, was alert and responsive, was in a mild level of distress as evidenced by her crying during the interview, maintained a neutral facial expression and appropriately focused eye contact, exhibited a mild level of apprehension and anxiety, denied any suicidal ideation, presented normal speech quantity and quality with no articulation errors, appeared depressed, had logical and coherent thought processes, did not exhibit delusions or compulsions, was oriented in all spheres, had normal memory functions for remote and immediate tasks, and appeared to have an intellectual functioning within the average range (*id.*). Notwithstanding these unremarkable findings, Dr. Landrum opined that Plaintiff appeared unlikely to be able to find competitive employment in her present mental state (Tr. 524).

11

Although Dr. Landrum opined Plaintiff's mental state would prohibit her from finding employment in June 2005, the record indicates Plaintiff did not seek treatment from another mental health practitioner until March 2007, and only then because the Commissioner referred Plaintiff to Dr. Hartig for another consultative psychological examination. *See* Tr. 689-90. Notably, nearly another two years passed before Plaintiff again sought any mental health treatment after the consultative psychological examination with Dr. Hartig. The ALJ explicitly noted this significant gap in mental health treatment as further support for the conclusion that Plaintiff's mental impairments were not severe and did not prevent Plaintiff from maintaining employment as Dr. Hartig opined (Tr. 19).

After the nearly two year lapse in treatment, Plaintiff sought intermittent counseling and medication from the Winter Haven Behavioral Center from January to September 2009 (Tr. 752-85). During this period, Plaintiff cancelled, rescheduled or failed to appear for appointments frequently (*id.*).[3] When Plaintiff did appear for her appointments, generally no clinically significant findings were made except that Plaintiff appeared tearful or depressed. *See, e.g.,* Tr. 758, 767, 771. Given the medical evidence of record, therefore, the ALJ properly found Plaintiff's mental impairments did not prevent Plaintiff from maintaining employment and appropriately did not afford significant weight to Dr. Hartig's opinion in that regard.

As further support for the finding that Plaintiff's mental impairments did not prevent her from employment, the ALJ cited to Plaintiff's activities of daily living. As the ALJ found,

---

[3] The record indicates Plaintiff stated she had issues with transportation leading to the cancellation or rescheduling of appointments. *See, e.g.,* Tr. 55, 763-66.

Plaintiff is only mildly restricted in activities of daily living and moderately restricted with social functioning (Tr. 14). For instance, Plaintiff admittedly enjoys crossword puzzles and cross-stitching (Tr. 794) and watches movies and soap operas, uses the computer, folds or hangs laundry, washes dishes, checks the mail, cooks, drives the car, and shops online, by mail and in stores for clothes, food, shoes and household products (Tr. 234-39, 513-16). Plaintiff also stated she can pay bills, count change, handle a savings account and use a checkbook or money orders as well as helps the kids with their homework (Tr. 61, 516-17). Plaintiff's ability to perform these and other daily tasks provides additional support for the ALJ's decision.

In sum, taking all of the foregoing evidence of record into consideration, the ALJ properly afforded little weight to Dr. Hartig's opinion that Plaintiff could not maintain employment where socialization was required given that she was prone to tears. To the extent the ALJ found Plaintiff's complaints regarding her mental impairments credible, the ALJ considered these mental impairments and included limitations in the RFC to account for any difficulties by limiting Plaintiff to working in the vicinity of other co-workers as long as there is only occasional interaction with them and no direct interaction with the public (Tr. 15). Accordingly, the ALJ applied the proper legal standards and substantial evidence supports her decision.

### 2. Subjective Complaints of Pain

Plaintiff further argues the ALJ improperly disregarded her subjective complaints of pain.[4] In addition to the objective evidence of record, the Commissioner must consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective evidence and other evidence. *See* 20 C.F.R. §§ 404.1529, 416.929. "Objective evidence" means medical signs shown by medically acceptable clinical diagnostic techniques or laboratory findings. 20 C.F.R. §§ 404.1512(b)(1), 404.1528, 416.912(b)(1), 416.928. "Other evidence" includes evidence from medical sources, such as medical history, opinions and statements about treatment the claimant has received. *See* 20 C.F.R. §§ 404.1512(b)(2), 416.912(b)(2). The Eleventh Circuit pain standard incorporates this scheme by requiring evidence of an underlying medical condition and either (a) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (b) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *Foote v. Chater,* 67 F.3d 1553, 1560-61 (11th Cir. 1995); *see* 20 C.F.R. §§ 404.1529, 416.929. In fact, "subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). When the ALJ decides not to credit a claimant's testimony as

---

[4] Plaintiff also argues the ALJ improperly disregarded her subjective complaints regarding her anxiety and depression. As detailed more fully above in Section III.1., the ALJ properly considered Plaintiff's complaints regarding her depression and anxiety to the extent she found them credible based on the evidence of record and, in fact, included limitations in the RFC based on Plaintiff's credible complaints. Accordingly, as previously stated, the ALJ's findings as to Plaintiff's anxiety and depression are supported by substantial evidence.

to pain, the ALJ must articulate explicit and adequate reasons for doing so. *Foote,* 67 F.3d at 1561-62. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Id.* at 1562.

In satisfying the pain standard, the ALJ considered Plaintiff's subjective complaints of pain as well as the objective medical evidence of record and found Plaintiff's complaints not entirely supported by the record. (Tr. 14-17). Particularly, she found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not credible to the extent they conflicted with the RFC (Tr. 16). When determining Plaintiff's RFC, the ALJ incorporated both exertional and postural limitations based upon Plaintiff's credible complaints of pain; namely, the ALJ required sedentary work with an opportunity to alternate from a sitting to a standing position every hour for 5 minutes at a time and stated Plaintiff should never kneel, crawl, or climb ladders, ropes, or scaffolds; only occasionally balance, stoop, or crouch; not perform overhead work; occasionally grasp and reach with her right non-dominant upper extremity; and avoid temperature extremes, excessive vibration, dangerous moving machinery and unprotected heights. These limitations encompass Plaintiff's credible complaints of pain as to her upper right extremity, her complaints regarding her inability to sit for an extended length of time due to pain, and her complaints regarding fatigue and pain when raising her arms overhead, to name a few. *See, e.g.,* Tr. 192-98. In reaching this conclusion, the ALJ discussed at length the medical evidence of record in support (Tr. 15-17).

15

Indeed, the objective medical evidence of record supports the ALJ's finding that Plaintiff's complaints regarding pain were not entirely credible and supports the limitations imposed by the ALJ in formulating Plaintiff's RFC. For example, in June 2005, Dr. Srinivas Nagabandi found Plaintiff complained of multiple joint pains despite a lack of evidence of any decrease in range of motion, a normal range of motion in all the joints, no use of assistive devices for ambulation, normal gait, normal straight leg raise test, normal sensory exam without defect, a motor exam with 5/5 in all extremities without any deficits, and a demonstrated ability to walk on her heels and toes, squat, sit, stand, walk, lift and handle objects (Tr. 370-72). Additionally, in December 2005, Plaintiff had a MRI of her cervical spine performed because of her complaints of pain (Tr. 627-28). The MRI revealed no abnormalities such as disc bulges, herniation or stenosis (*id.*). Following that, in February 2006, after a status post right ulnar nerve release operation performed in January 2006 to relieve arm, shoulder and wrist pain, Dr. Steven Tresser reported Plaintiff was doing much better with decreased numbness except around her elbow, she had mild tenderness around her incision site, she was feeling well, she had increased functional use and sensation in her hand and forearm, and she was significantly improved (Tr. 621). Further, at that time, Dr. Tresser found Plaintiff had reached maximum medical improvement as to her cervical spine and ulnar nerve issues and returned Plaintiff back to regular duty work (Tr. 615-16). Again, upon a consultative examination in November 2007, Plaintiff presented with no significant physical findings that would limit Plaintiff's ability to work (Tr. 723-25).

As those findings indicate, the objective medical evidence contradicts Plaintiff's complaints as to the intensity, persistence and limiting effects of her pain. As such, the objective

16

medical evidence provides substantial support for the ALJ's decision to find Plaintiff's complaints of pain partially credible. Given the foregoing, the ALJ clearly articulated her reasons for crediting only some of Plaintiff's complaints of pain and the record provides substantial support for her findings. Accordingly, the ALJ's findings as to Plaintiff's complaints of pain are supported by substantial evidence.

## IV.

Accordingly, for the foregoing reasons, it is **RECOMMENDED** that:

(1) The decision of the Commissioner be **AFFIRMED**; and

(2) The Clerk of Court be directed to enter final judgment in favor of the Commissioner and close the case.

**IT IS SO REPORTED** in Tampa, Florida, on this 14th day of February, 2012.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

**<u>NOTICE TO PARTIES</u>**

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. 1982) *(en banc).*


Copies furnished to:
Hon. James D. Whittemore
Counsel of Record